The first argued case this morning is number 18-1106, AVX Corporation v. Presidio Components. Mr. Quillen. Good morning, Your Honor. May it please the Court. I'd like to focus on standing, but before that there are a couple of typos in each of our briefs I'd like to correct. On page 15 of our blue brief, at line 4, we should have omitted the word low. And on our gray brief, at page 3, also on line 4, we should have omitted the same word, low. Thank you. Turning to standing, Your Honor, the Supreme Court has said that the question of standing, quote, is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution, close quote. That's from the data processing case. AVX certainly satisfies those two conditions. Subsequently, in the Lujan case, the Supreme Court set out the, quote, irreducible minimum, close quote, of constitutional standing in three elements. Injury in fact, causation, and redressability. AVX is a competitor of Presidio, and AVX's blue brief and its supporting documents show that all three elements are satisfied in this competitor standing case. Can I just ask this? It seems to me that in the various competitor standing cases, including, I guess, ours in a trade context and the Supreme Court in some of the older cases arising under the APA and the D.C. Circuit, all involve essentially the introduction of, or a government action, almost always about price or new competitors where there was no question that the aspect of the government action that's challenged applied to the very offerings of the competitors. And that's not always true about patents. Patents are feature-specific government actions. And if you, for example, are making offerings in competition with your rivals but have no concrete, non-speculative interest in that feature, then why would those competitor standing cases apply? Those competitor standing cases bear, even in that situation, Your Honor, even in the situation here. For example, there's the notion in patent law of convoyed sales. We're not saying there's convoyed sales here, but you get the sense that in Wright Height, for example, a patent owner has certain rights, and violating those rights means the patent owner is entitled to damages for competing products that come within the scope of that patent. But that's not the limit. Under certain circumstances, there are... Right, but I don't recall that you made by declaration or otherwise here a specific showing to essentially connect what you are doing, not including or planning to do, some existing or non-speculative future use of the patented feature, or to something else that would be a non-speculative tie of what you do to the patent, like convoyed sales or like convoyed sales. The declaration refers to the annual report of a client of ABX. ABX's annual report discusses how it's important for ABX to provide a broad range, a broad array, a broad range of products, and the declaration also says that when... He's aware of at least one situation where a client, a potential customer, won't purchase because there's a threat of being shut down by means of an injunction. The notion... I'm sorry, but that didn't relate specifically to the 639 patent or something covered by the 639 patent, right? Or even arguably covered, it was just a different... That's correct. I know both companies make a large variety of capacitors and compete and sue each other all the time. They're very much direct competitors, Your Honor. There's no dispute that they're competitors. The red brief acknowledges as much. This court, in a different Presidio case, has acknowledged that capacitors of a subsidiary of ABX quote, compete with capacitors from Presidio. That's the other Presidio case that's cited in our blue brief. There's no question that they're competitors. So why is this case, on its facts, different from, I guess, our recent set of cases? Most, probably most close, would be JTECT. Others are in the same family. Figenics, the more recent Momenta one. But JTECT seems to be the one that says being a competitor is not by itself enough without some existing or non-speculative plan for an activity involving a feature arguably covered by the patent at issue. With respect, Your Honor, I know this is not news to the court, but Article III is not limited, not confined to patent infringement. The data processing case, the Supreme Court's data processing case, presents a situation of which this is the flip side, if you will. In data processing, there was one incumbent who was providing services, and there came a ruling from the government agency. That ruling permitted many other competitors to compete, and that was an economic harm that was sufficient to satisfy standing. This situation, as it were, is the flip side of that. Under our view of the law, under our view of the facts, this technology was in the public domain. It was freely available and wrongly taken out of the public domain by the grant of the patent and the upholding by the board. So in our view of the facts, there were potentially many competitors who the technology was available to be used by competitors. Then came a ruling by the patent office in the grant of the patent and the upholding by the board, and that ruling said, no, no, from now on, no other competitors. No one can make, use, or sell a device that comes within the ambit of these claims. That's economic harm. That's injury, and that's sufficient, in our view, to satisfy Article III, Your Honor. Let's move to the merits. For the sake of this argument, let us assume that there is standing. We appreciate the complexities, the aspects of the stuffle, and so on, the intent of Congress. This is not a simple question, and we need to sort it out. But let's talk about the merits. Well, Your Honor, it's our view that the patent is no good and that the board erred in not striking down the patent. The board had accepted, as it were, purported teaching away without evaluating all the evidence. In our view, what the board has done is to say that Presidio, by accepting the known disadvantages in the art and proceeding along that route, nevertheless, was able to get a patent. We say that's not a correct view of the law in U.S. v. Adams. You can't just adopt a new use for an old device and get a patent on that. That's not appropriate. We say that what has happened here is that there's a teaching in these two references, and the teachings are being combined. The board and Presidio focus on the invention of Leibovitz. And as we know, a reference's teaching is not only not limited to its claims, it's not even limited to its preferred embodiment. A reference is available for everything it teaches. And here, part of what Leibovitz is teaching is available, in combination with DeVoe, to render the claims unpatentable. We're listening. Can you focus, and first you'll have to clarify my question before you answer it. You had some point to the effect that the subject of the discouragement in Leibovitz is only as to part of what the claims here at issue in the C639 cover, that that discouragement wouldn't discourage the, let's call it, DeFoe, what is that? DeVoe? DeVoe, not DeVoe. As to some of what's covered by the C639 claims, and therefore the analysis of the board erroneously narrowed its focus about, by an effect, ignoring part of the coverage of the current claims. Yes, Your Honor. Can you explain to what extent I just said is A is your argument and B is true? Yes, Your Honor. I think that's an accurate presentation of what we're trying to say. But does this have to do with what high inductance, not always being required, or if you could get to that level of detail. Right, so Leibovitz is concerned with inductance at high frequencies. The claims of a patent that's under attack now, those claims are not limited to high frequencies. So even if you were to accept that there is a teaching away with regard to high frequencies in Leibovitz, nevertheless, the claims are not limited. And it's error, in our view, to expand, as it were, that teaching away, that teaching of Leibovitz, and treat it as a teaching away for the scope of the claims. The argument from Presidio and the board's analysis aren't commensurate with the scope of the claims, is the way to view it. Another part of the merits has to do with the board's choosing not to consider our reply arguments and our evidence in reply. We think that's error under Belden and other cases that this court has presented. The board has turned a blind eye, certainly. What we did in the reply brief was directly responsive. It was replying to arguments in the patent owner response. Let me just ask you some more about Leibovitz. Leibovitz said that the high inductance would have been unattractive, and therefore is viewed as teaching away. That's the way that Presidio is presenting it, Your Honor. Well, that's what the board found, is it not? Overbroadly, that's what the board found. What inductance in Leibovitz is only related, the concern with inductance is only related to high frequencies, and the claims don't have a limitation on frequency. There are many applications for the capacitors that don't involve high frequencies, that involve low frequencies, and for those, there should not be any teaching away, and the claims shouldn't be able to take that away from the public. Thank you. We'll save you a little time. Good morning, Your Honors. Mr. Ahrens. Greg Ahrens on behalf of the patent owner, Presidio. I'd like to also address the issue of standing, as that's a predicate to this appeal going forward. Presidio asserts that the petitioner has not met its burden of coming forward, burden of production, on showing that standing is applicable in this case, and as Judge Toronto pointed out, the most directly relevant recent case, I'd say, is the JTEC case as well. Is your position that if there is no standing to appeal, nonetheless, estoppel should apply? I'm sorry, Your Honor. If there's no standing to appeal, Presidio would still be estopped, or the patent owner would be estopped, or petitioner? Why? The whole concept of the legislative structure includes estoppel. That was a critical factor during the evolution of this procedure, and it also included the opportunity and right to appeal. So now, for reasons which seem to me to comport with the Constitution, at least in some situations, perhaps not this one, we say there's no standing to appeal. Therefore, why should the prohibition on raising the argument in litigation apply? Well, certainly, if there were—the question is, were there to be subsequent litigation by Presidio against AVX on this particular patent, and this court were to find that at this appeal there had been no standing, would it be appropriate in the future to say that because of the finding of lack of standing and standing not being supported by the estoppel provision, which is the prevailing case law from the panels of this court, that's a question to be decided in the future. It's not on the table here, and I don't think it's— But that's what it's all about, isn't it? If there's no standing to appeal, nonetheless, the estoppel provision falls into place. And I mentioned estoppel. Sure. I mean, if, again, in the hypothetical where Presidio were to sue under the 639 patent against AVX, should AVX actually come out with a product that is implicating the 639 patent, which, as we know from the declaration of Mr. Slavitt— But just focus on the estoppel question. Has this court held that when there is no available appeal because the petitioner, having lost before the board, lacks standing, that nevertheless 315E, the estoppel provision, bars that petitioner from later raising a ground either raised or that could have been raised in the board proceeding? I don't think this court has addressed that question. Well, here we are. Well, actually, I beg your pardon, Your Honor, but I don't think we are there yet because if this court finds that there is no standing for this appeal to proceed and then at some future point AVX actually comes out with a product, Presidio actually sues them, AVX raises—or Presidio raises the estoppel provision, and then AVX says, wait a minute, we shouldn't be estopped because we couldn't rely upon the estoppel provision for purposes of standing, so it shouldn't be a sword and a shield as to us, then that question would be raised and germane then, but that's only in this hypothetical world that doesn't exist right now. Well, it doesn't seem to me to be hypothetical. We're talking about legislative intent. And you raised the issue that they don't have standing, and here they are. Correct. And I guess I would suggest that if this court wants to address what I think is a hypothetical question in the future, whether the estoppel provision would apply to AVX, I'm not sure. I haven't actually considered whether it should apply. You've made one kind of suggestion as to the kind of argument that AVX might make against estoppel, which is it's unfair because we didn't get a right to appeal, but they might also say in normal issue and claim preclusion law, it's standard law from Kircher against Putnam, and in this case Skyhawk, that the absence of a right to appeal generally makes preclusion unavailable. So there would be a question whether the language of 315E, when read together with the right of appeal of 319, might be understood implicitly to incorporate that longstanding restriction on preclusion or, on the other side, the language is what the language is. Correct. And under all of these scenarios that we're currently discussing, I think when I say they're hypothetical, they only would come into play, again, if AVX comes out with a product which it currently has indicated no plans to do. That's the only reason that the whole situation arose because of the possibility of conflict between competitors. I think that they complain that they haven't been assured that they wouldn't be sued. Well, that is what they have said. In their briefs, they've argued that, but I would suggest that if you look at the evidence in the record, which is a declaration of Mr. Slavitt, all he has said is that AVX and Presidio are competitors. That's true. That was true in JTEC, where standing was not found to be applicable. They make no statement that they have a product that uses VIAs, and the 639 patent claims require VIAs, so they've made no allegation that they even have a product that has the feature in question. They make no allegation that they're even intending to have a product that incorporates VIAs. There's certainly been litigation between Presidio and one of the subsidiaries of AVX, which is known as ATC, American Technical Ceramics. There's actually no pending litigation brought by Presidio on any Presidio patents against AVX itself. So they make it seem like they're very fearful, this small family-owned San Diego company. Does AVX as such participate in the marketplace, or does it merely hold subsidiaries that do? No, AVX has products. They have capacitor products, and there are, as you pointed out yourself, Your Honor, a myriad of capacitor products. The catalogs of each of the companies have literally hundreds of capacitor products. The 639 patent claims have a specific feature, that being the incorporation of VIAs, which are not found in any product of AVX. I mean, if you look at the Slavitt Declaration, nowhere does he say that they have a product with that feature, and nowhere does he say that they're intending to have a product with that feature. So unlike the DuPont case, Your Honor, where DuPont actually had a plant that was ready to manufacture a product that was covered by the patent that was involved in the IPR, and the court found, and practitioners now refer to it as DuPont standing because they met the requirements of having an actual, immediate, concrete plan to take action, which would likely result in a charge of infringement. We have no such allegations in this case. Can I turn to the merits? Yes, you can turn to the merits. Can you address the argument that I was discussing with Mr. Quillen toward the end of his argument about how, and I'll summarize it this way and then you can correct me, that the scope of the discouragement in Liebowitz is more limited than the scope of the claims here at issue, and therefore the discouragement idea cannot itself be enough to find no motivation to combine, to arrive at some of what's in the claims that are here. Of course, and in the framework of your question, of course, we understand that this court is looking at the determination of non-obviousness of the claims de novo, and yet the factual findings, including the teaching away finding by the board, is reviewed for substantial evidence. So with that framework, I would suggest that if we look at the Liebowitz teaching, while ABX, again, in their brief Can you tell me what I should be looking at? I'm sorry. It's akin to what you're looking at. I apologize, Your Honor. Column one of the Liebowitz patent, which is found at 503, 504. Correct, 502, 503. So the particular column is column one, and as we get to the teaching away that's been cited by all the parties, the high inductance drawback also applies to devices with a single, this is line 45 and beyond, with a single dielectric layer and one or more electrodes buried within a multilayer structure in which electrical contacts to said buried layers are brought to the surface through vias. The present invention, so there's case law to the effect that when somebody talks about the present invention, they're talking broadly about all aspects of the invention. It's not just a preferred embodiment, it's a thought present invention, avoids any of these inductance increasing methods, and in fact makes practical a classic single layer dielectric ceramic capacitor with such and such thickness. There's actually no specific reference in here to a high frequency limitation. If you look to the next paragraph down at around line 56. Is there anything about high frequency in the claims of the Leibovitz patent? No. Okay. The claims of Leibovitz aren't limited to high frequency, nor are the claims, and I think this is while opposing counsel made it seem as though because the 639 patents don't have any mention of a frequency range that somehow, therefore they could cover any frequency range. If the teaching away in Leibovitz was somehow limited to the high frequency portion of the spectrum, then because the claims cover more than that, that the teaching away is only teaching away from a portion of the scope of the claim. I think that defies logic to me, and I hope it does to you as well, particularly when you look at the passage that's being cited, which is line 56, column 1 of Leibovitz. Two single layer capacitors have lower inductance and thus higher resonance frequencies than their multi-layer counterparts and are useful at higher frequencies. Okay. So that's it. It says are useful at higher frequencies. It doesn't tie the high inductance drawback of buried electrodes and vias to only the high frequency spectrum. It just simply doesn't do that. So AVX's argument is really trying to piggyback from a very sort of generic comment about the usage of these products, tie it to the teaching away, which I think counsel, or in their briefs, essentially their expert had to admit that Leibovitz actually says what it says. It actually is telling a posita not to use vias, and it's not just in the specification here in column 1. If you look at the file history, and I apologize, I just noticed this the other day, the portion of the appendix that has the file history in it, the appendix page numbers are cut off. I felt sick twice. I thought it was mysterious. The file history is considered part of the published prior art? Well, certainly it's within the scope of what a posita would be aware of when they are looking at what a prior art reference teaches, and because what I was going to say, Your Honor, is that the claims of Leibovitz specifically. What difference does it make what Leibovitz argued in order to obtain his claims isn't what counts, what turns out to be in the published patent. It counts the most, and one of the things that's in the published patent are the claims of the published patent, and the Leibovitz claims specifically exclude vias. We use Leibovitz's claim construction rather than the claim construction of what a person of ordinary skill would take away from those claims. Your Honor, I'm not arguing about claim construction of Leibovitz. Claim interpretation, then. Sure. My point is simply that the claims of Leibovitz say specifically that that invention in Leibovitz is without a via. So that's a second place in the Leibovitz published patent specification in the claims where it says no via. Mr. Quillen did make reference, I think, near the beginning of his discussion of the merits that, of course, Leibovitz, for purposes of its use as prior art, is not limited to the claims of Leibovitz but includes everything taught in the document. Sure, and one of the things that's... Which would include things that in the prosecution, for example, it may have given up by amending its claims. Of course. But the fact remains that I'm not sure there's case law that says there has to be some number of alleged statements of teaching away beyond one in a patent. Some cases certainly find that there's a teaching away just sort of in the overall scheme of a specification in the prior art. And I see that my time is up. No, please finish the thought. Just finishing the thought. And that is that... So there's not a requirement of multiple instances of teaching away. Here you have what, to me, seems like one of the most explicit teaching away, which is in the specification in column 1, as we've seen, where it says we don't use vias. Vias are bad. Don't use them. You look to the claims, that's yet another place in the specification where it excludes vias specifically. And then as a follow-up, if a posita were to look at the file history, they would see that the claim was amended to exclude vias. And we will specifically distinguish from the Devereux 443 patent and said, whereas that one mandates vias, I don't use vias. Don't use vias. Anything else you want to add, Mr. Arons? Thank you very much. Thank you, Mr. Arons. Now, the rebuttal time, please. Okay, Mr. Cohen. Thank you, Your Honor. Let me start where we just left off. As counsel says, the Liebowitz claims were amended to include no vias. In other words, this reference in column 1 to the present invention included, when the application was filed, a claim, an invention, that did include vias. They had to be excluded in the claim 1 during prosecution to get the Liebowitz claims allowed. On page 28 of our blue brief with regard to high frequency, 28 of our blue brief, we say that Presidio's expert repeatedly admitted that Liebowitz's preference for low inductance only applied to high frequency applications, not that the prior art as a whole forbade the proposed combination. And turning on the estoppel, it's not hypothetical, Your Honor. It's not hypothetical. Two points. One is that it's statutory. I'd be surprised if the law was that we could just not apply it, even though it may be statutory. Second, it's not hypothetical. It's not in the future. The estoppel effect is effective now. Right now, we're estopped. We, for example, could not go into the patent office and try to file another IPR on other art. We are estopped. We are estopped, and that's a current harm to us. Well, but it's a current harm to you only if you are now or have non-speculative plans to engage in behavior that would be affected by the 639. Article 3, again, Your Honor, is not— Even assuming that estoppel applies, and I think at least— is your understanding that we have determined that estoppel under 315e applies even when, for constitutional reasons, there's no right of appeal? I don't believe the Court has actually said that. Okay. Perhaps this will be an occasion when the Court will be able to visit that. I think you're right. We have not actually said that, but it seems to me that that's an issue in this case. Your friend says it's not. Well, I will— We'll see. We'll see, Your Honor. Any more questions? Okay, thank you. Thank you both. Thank you, Your Honor. The case is taken under submission.